UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HOWARD E. HARMON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 4:23-cv-01105-SEP |
| ) | |
| ALEXANDER L. DOWNING, et al., ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

Before the Court is self-represented Plaintiff Howard E. Harmon's application to proceed in the district court without prepaying fees or costs. Having reviewed the application, the Court finds Plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $1.70. Furthermore, after initial review, the Court will issue service on the Complaint as to Defendants Alexander L. Downing, Peyton J. Keener-Harris, Dakota Lett, and Unknown Boyer. The Court will dismiss without prejudice the remaining Defendants.

## MOTION TO PROCEED WITHOUT PREPAYING FEES OR COSTS

A prisoner bringing a civil action is required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20% of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20% of the preceding month's income credited to the prisoner's account. *See* 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a certified account statement for the period from February 10, 2023, through July 10, 2023, showing an average monthly deposit of $8.50. The Court will assess an initial partial filing fee of $1.70, which is 20% of his average monthly deposit.

## LEGAL STANDARD ON INITIAL REVIEW

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be

granted.  To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.  "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.  The Court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir.2004)).  But even pro se complaints must "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone*, 364 F.3d at 914-15 (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").  And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### THE COMPLAINT

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against 27 Defendants, alleging his constitutional rights were violated when Defendants retaliated against him after he reported a Prison Rape Elimination Act (PREA) incident.  The alleged retaliation included depriving Plaintiff of three meals and performing a cell extraction by use of force on July 3, 2021.  He names as Defendants the following individuals employed at the Potosi Correctional Center (PCC):  Alexander Downing (Correctional Officer (CO)), Unknown Wells (CO), Unknown Brown (CO), Peyton Keener-Harris (CO), Dakota Lett (CO), Michael Thompson

(CO), Unknown Smith (CO), Matthew Harlan (CO), Unknown Boyer (CO), Nathan Waibl (CO), Unknown Carver (CO), Unknown Mezo (CO), Unknown Smith (CO), Jeffrey Jones (CO), Joshua Browers (CO), Matthew Pultz (Functional Unit Manager (FUM)), Jody Glore (Deputy Warden), Paul Blair (Warden), Ashley Scaggs (Psychologist), Barbara Lindell (Psychologist), Brian Davis (FUM), Unknown Morgan, Unknown Fox, and PCC. He also names as Defendants the following officials: Anne Precythe (Director of Adult Institutions, MDOC), Eric Schmitt[1] (Attorney General of Missouri), and Michael Parson (Governor of Missouri). He sues all Defendants in both their individual and official capacities. Doc. [1] at 3, 11.

Assuming all well-pled facts in the Complaint to be true, the facts are as follows: In June of 2021, CO Smith retaliated against Plaintiff, after insulting him by making "homosexual comments." *Id*. at 12. Plaintiff asked to file a PREA report with COs Harlan and Fox, but more than five months passed before the report was filed by CO Morgan. *Id*. The morning after it was filed, Plaintiff was denied breakfast by CO Smith. *Id*. CO Downing made a derogatory statement and also denied Plaintiff his meal. *Id*. CO Smith slapped a foam cup out of Plaintiff's hand at the food port. *Id*. In response, Plaintiff sought to be transferred from PCC, writing letters to Defendants Precythe, Schmitt, and Parson.

On July 3, 2021, CO Wells denied Plaintiff a shower and a morning meal. COs Downing, Keener-Harris, and Lett denied him a second meal. *Id*. at 14. After that, COs Downing and Boyer returned with pepper spray and a camera and ordered Plaintiff to submit to restraints. *Id*. Plaintiff's cellmate tried to explain that they had done nothing to warrant a cell extraction or use of force, but Downing became hostile and ordered Plaintiff's cellmate to move away from the food port so that Downing could spray Plaintiff with pepper spray. *Id*. at 15.

Fearing the pepper spray, Plaintiff climbed to the top bunk and shielded himself with the mattress. *Id*. Despite this, he was still blinded by the spray. *Id*. Plaintiff descended from the top bunk and swung his arm to protect himself, after which he was punched in the head by several fists, even after being fully restrained. *Id*. Plaintiff was then dragged to a suicide cell while Defendants stated that Plaintiff liked to beat women. *Id*.

---

[1] Eric Schmitt was the Attorney General of Missouri when this action commenced. The Attorney General of Missouri is now Andrew Bailey, who is substituted as the named party pursuant to Federal Rule of Civil Procedure 25.

On July 5, 2021, CO Thompson fabricated a claim that Plaintiff made a noose in his cell. *Id*. That fabrication was to allow Thompson to use force and retaliate against Plaintiff; it also provided a pretext "to clean [the] cell, a crime scene, so that the psych and medical and regular administration were not aware that an inmate assault occurred." *Id*.

Plaintiff states that he prepared an affidavit "to show cause of why I should be transferred and to stop retaliation." *Id*. at 17. He provided copies of this affidavit to Defendants Jones, Waibl, Carver, Brown, Blair, Scaggs, Pultz, Mezo, Smith, Davis, Browers, and Lindell. *Id*. Plaintiff asked for their help with transferring out of PCC and stopping the retaliation. *Id*.

The assault caused pain on Plaintiff's left upper back, left shoulder, and collar bone. *Id*. at 21. His left eye remained blurry for several months after the attack. *Id*. He also had knots and open cuts on his head and face. *Id*. He was denied medical attention over the Fourth of July weekend. *Id*. at 16. Somewhat contrary to this assertion, he states that he had a medical assessment on July 5, 2021. *Id*. at 21. Nurse Frank would not schedule him for x-rays or give him any pain medication, and Plaintiff filed grievances about the refusal. *Id*. Two or three months later, Nurse Crouch sent him to see an eye doctor and get x-rays. *Id*.

Plaintiff seeks punitive and compensatory damages in the amount of $100,000 from each Defendant. *Id*. at 24. He also seeks to have criminal charges brought against Defendants, plus he wants a declaratory judgment, injunctive relief, and a temporary restraining order. *Id*. Finally, he wants to be evaluated by a doctor outside of MDOC and to be transferred to another institution where he can feel safe. *Id*.

## DISCUSSION

### I. First Amendment Retaliation

Plaintiff alleges that he was subjected to a number of unlawful conditions of confinement in retaliation for reporting a PREA incident while incarcerated at PCC. The right to be free from retaliation for availing oneself of the grievance process is clearly established in the Eighth Circuit. *Santiago v. Blair*, 707 F.3d 984, 991 (8th Cir. 2013); *see also Nelson v. Shuffman*, 603 F.3d 439, 450 (8th Cir. 2010) ("actions taken in retaliation for an inmate's filing of a grievance are actionable under 42 U.S.C. § 1983"). Here, Plaintiff alleges that Defendants Downing, Keener-Harris, Lett, and Boyer retaliated against him for filing a PREA complaint in violation of the First Amendment. The retaliation allegedly included three denied meals and an unnecessary cell extraction during which he was pepper sprayed and assaulted.

Plaintiff's allegations are sufficient to establish, for purposes of initial review, that the adverse action taken in retaliation for filing a PREA complaint would chill a person of ordinary firmness from filing such complaints. *See Santiago*, 707 F.3d at 992 (the question of ordinary firmness "is usually best left to the judgment of the jury"). The Court will therefore issue service on Defendants Downing, Keener-Harris, Lett, and Boyer.

(b)     Eighth Amendment Excessive Force

Plaintiff has also stated a plausible claim for unlawful use of force under the Eighth Amendment. He alleges that he was pepper sprayed and beaten during an unnecessary cell extraction, even after he was fully restrained and compliant. He claims his head and face were repeatedly slammed into his bunk and the walls of his cell.

The Eighth Amendment forbids the "unnecessary and wanton infliction of pain" constituting cruel and unusual punishment. *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992); *see also Burns v. Eaton*, 752 F.3d 1136, 1138 (8th Cir. 2014). When a prison official is accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The factors to be considered in determining whether force was used in good faith include "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Plaintiff alleges he was pepper sprayed and assaulted by Defendants Downing, Keener-Harris, Dakota, and Boyer, and that the assault continued even after he was cuffed and defenseless. The Court finds on initial review that Plaintiff has stated a plausible claim that the Defendants used excessive force in violation of the Eighth Amendment and will issue process on them in their individual capacities.

(c)     Denial of Medical Care

Plaintiff alleges he was denied medical attention on the weekend of July 4, 2021. He states that he was assessed by a medical team on July 5, 2021, and two to three months later he was sent to an eye doctor, received x-rays, and was given painkillers. Viewing the facts in the light most favorable to Plaintiff, the Court finds that the allegations are not sufficient to make a plausible claim for deliberate indifference to a serious medical need.

To establish deliberate indifference, a plaintiff must prove that he suffered from an

objectively serious medical need, and that prison officials actually knew of yet disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). A "serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). To satisfy the subjective part of the analysis, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021).

Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). Deliberate indifference is more than mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). "A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007).

Plaintiff was assessed by a medical team within two days of the alleged assault, which occurred on a holiday weekend. Plaintiff does not allege what his injuries were at the time of the medical assessment, nor does he allege what condition the medical team was deliberately indifferent to. He does not allege that medical professionals assessed and deliberately disregarded any serious medical need. He was later seen by an eye doctor and received x-rays. Viewed in the light most favorable to Plaintiff, he alleges that he should have been taken to the eye doctor and received x-rays sooner. But a subjective desire to be seen sooner does not state a plausible claim for deliberate indifference. The Court will therefore dismiss Plaintiff's Eighth Amendment claims of deliberate indifference to a serious medical need.

(d)     Defendants Unknown Brown and Unknown Carver

In an apparently unrelated incident, Plaintiff alleges that Defendant Brown approached him in 2020 and "aggressively" told him that they were "going to leave that situation alone." Doc. [1] at 18. Plaintiff alleges Brown was referring to Plaintiff's prior assault on staff at ERDCC, which precipitated his transfer to PCC. *Id*. Plaintiff took it as a threat, and when he asked Carver about the statement, Carver explained that "no one [is] going to bother me. As long as I lay back." *Id*.

Plaintiff has alleged no constitutional violation arising out of these actions, and the Court cannot discern one. The Court will dismiss Plaintiff's claims against Defendants Brown and Carver for failure to state a claim upon which relief may be granted.

(e) <u>No Personal Responsibility Alleged</u>

Plaintiff fails to state individual capacity claims against the remaining Defendants, including Unknown Wells, Michael G. Thompson, Unknown Smith, Matthew C. Harlan, Nathan Waibl, Unknown Mezo, Unknown Smith, Jeffrey Jones, Joshua Browers, Matthew Pultz, Jody Glore, Paul Blair, Ashley Scaggs, Barbara Lindell, Anne L. Precythe, Eric Schmitt, Michael L. Parson, Brian Davis, Unknown Morgan, Unknown Fox, and Potosi Correctional Center. Plaintiff mentions Defendants Precythe, Schmitt, and Parson once, stating that he wrote them a letter about the retaliation he was experiencing at PCC in an attempt to be transferred to a different facility. Defendants Jones, Waibl, Blair, Scaggs, Pultz, Mezo, Smith are only mentioned when Plaintiff states he copied and sent them an affidavit "to show cause of why I should be transferred and to stop retaliation." *Id*. at 17.

Plaintiff fails to allege facts showing how these Defendants are causally linked to, and directly responsible for, any violation of his rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights). Nothing in the Complaint can be construed as alleging that these Defendants had any involvement with any incident or policy that gave rise to the allegedly unconstitutional conduct. As a result, Plaintiff's claims of constitutional violations against these Defendants fail to state a claim upon which relief may be granted. *See also Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (citing *Iqbal*, 556 U.S. at 676) (to state a claim under § 1983, plaintiff must plead that a government official has personally violated his constitutional rights); *Beaulieu v. Ludeman*, 690 F.3d 1017, 1030-31 (8th Cir. 2012) (supervisors cannot be held vicariously liable under § 1983 for actions of subordinates, and general allegations that a defendant supervises a facility without specification of the defendant's individual actions are not sufficient to state claim).

(f) <u>Loss of Property Claim</u>

Plaintiff alleges his property was thrown away when he was moved to the administrative segregation wing. "When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process

Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 702 (8th Cir. 2004). Missouri provides such an adequate postdeprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin. Mo. R. Civ. P. 99.01; *see also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law). To the extent Plaintiff alleges claims arising out of the loss of his property, these claims will be dismissed.

(g)     Official Capacity Claims

Finally, the Court will dismiss Plaintiff's official capacity claims against Defendants. An official capacity claim against an employee of a governmental entity is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).

Here, Defendants are employees of the State of Missouri or the Missouri Department of Corrections, which is a department of the State. "Section 1983 provides for an action against a 'person' for a violation, under color of law, of another's civil rights." *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). But "neither a State nor its officials acting in their official capacity are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017) (a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). Moreover, in the absence of a waiver, the Eleventh Amendment bars suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). For these reasons, the Court will dismiss Plaintiff's claims against Defendants brought in their official capacities.

**MOTION TO APPOINT COUNSEL**

Plaintiff has also filed a motion to appoint counsel. *See* Doc. [3]. The motion will be denied at this time. In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has

stated a non-frivolous claim . . . and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

On review of those factors, the Court finds that the appointment of counsel is not warranted. Plaintiff has demonstrated so far that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's application to proceed in the district court without prepaying fees and costs is **GRANTED**. Doc. [2].

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $1.70 within **thirty (30) days** of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process upon the Complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Defendants Alexander L. Downing, Peyton J. Keener-Harris, Dakota Lett, and Unknown Boyer in their individual capacities.

**IT IS FURTHER ORDERED** that Plaintiff's Complaint against Defendants Unknown Wells, Unknown Brown, Michael G. Thompson, Unknown Smith, Unknown Harlan, Nathan Waibl, Unknown Carver, Unknown Mezo, Unknown Smith, Jeffrey Jones, Joshua Browers, Matthew Pultz, Jodi Glore, Paul Blair, Ashley Scaggs, Barbara Lindell, Anne L. Precythe, Eric Schmitt, Michael L. Parson, Brian Davis, Unknown Morgan, Unknown Fox, and Potosi Correctional Center is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel is **DENIED** without prejudice. Doc. [3]

An Order of Partial Dismissal will accompany this Memorandum and Order. Dated this 13th day of September, 2024.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE